Thank you, Your Honor. Good morning. May it please the Court. Stacy, let's start the broadcast. Corey Andrew and Michael Filipovich on behalf of Jerry Cheatam. This Court appointed us to address the question of whether the exclusion of Dr. Loftus' testimony violated Mr. Cheatam's right to present an offense. The facts of this case compel habeas relief. They're somewhat distinct facts. There was no corroborating evidence in this case. The only testimony connecting Mr. Cheatam to the offense was the identification made by M.M. Her observation of her assailant was made under circumstances that are known to lead to unreliable results. It was a cross-racial identification. A weapon was involved. It was a very short time span of approximately five seconds and likely less that she observed her assailant. What about the fact that she gave a description to a police artist and the drawing that was made from her description was thought by the State courts to be almost photoperfect or whatever with the appellant? I have a few responses to that. The first is we would disagree with the characterization of the sketch, the rough sketch being near photoperfect. But more importantly — When you say you would disagree, is that — do we have to give deference to the State court on that? Is that like a factual finding? I don't believe so. I think it's clearly — it's just a matter of opinion. And this Court is just as able to look at those images as the State court was. But — Well, we have accepted statements like that from State appellate courts as findings of fact. I mean, they look at the photograph. We might have our own opinion. But if they say it's near photocopy, isn't that a finding of fact on our precedent? I would say it's not a finding of fact. But more importantly, I think that the resemblance between the sketch and the photograph is not dispositive of this issue because the description given by M.M. to the sketch artist was itself limited by the circumstances of the observation. So, again, limited by the amount of time that she's had the lighting. And I don't think it's any surprise that she would then, with a memory driven in part, at least, by the sketch, pick somebody who resembled the sketch from the photomontage. It was a simultaneous — Counsel, this is Judge Bea. You started off by saying that there was no circumstantial or corroborating evidence in this case. Wasn't there forensic evidence by the prosecution that tied a shoe tread to the defendant? There was a shoe tread that resembled a tread of a shoe that was believed to have been owned by Mr. Cheatham, although there was some question of, at the time of trial, whether it was actually the same shoe. And the State court, the Washington Court of Appeals, found that that evidence was not conclusive in the reversal of the first conviction after the first trial. And that was the only other evidence. I think one thing that sets this case apart from Federal cases and other State cases that this Court has considered is the absence of an instruction, a cautionary jury instruction on eyewitness identification. As this Court has repeatedly recognized, there is a body of — that the jury needs to be educated about certain factors that affect eyewitness identifications. This Court has endorsed the use of a cautionary jury instruction. But the Washington courts have refused to give those instructions. And so in a case like this, where there was no corroborating evidence, where the circumstances are such that an unreliable identification is likely, and where no instruction was available, the denial of Mr. Cheatham's ability to present the testimony of Dr. Loftus violated his right to present an offense. If we were to accept your theory, does it mean that a State court in every case has to admit evidence of expert testimony of relating to a witness's identification? Absolutely not, Your Honor. As this Court has recognized in cases following Miller v. Stagner, there is a balancing test that needs to be undertaken to determine whether or not the exclusion of a particular type of evidence violates the right to present an offense. In this case, under these facts, the exclusion of the evidence did. However, there are many circumstances in which the exclusion of this type of evidence would not violate the right to present an offense. Here is the central issue. The only issue is the identity of the perpetrator. There's no corroborating evidence. Mr. Cheatham was unable to in any way present or educate the jury about these factors. If the Washington courts had allowed for the cautionary instruction, perhaps that would have made a difference. There would have been another means to provide this information to the jury. But under the facts of this case, they were not there. Moreover, the exclusion of the evidence forced Mr. Cheatham to present a fundamentally different defense than he would have presented had he been allowed to introduce the testimony of Dr. Loftus. He was forced to challenge M.M. as her individually, her ability to perceive, her ability to remember, whereas if he had been given the opportunity to present a scientific framework from which the jury could evaluate the evidence, it would have been much less of an attack on M.M., but he would have been able to provide this objective framework from which the jury could still credit her testimony, believe that she was telling the truth, but find that she was the identification was nonetheless unreliable. I'd like to spend a couple of minutes, I guess, addressing what the State court did. That's fine. If you want to make rebuttal argument, though, stop short of using all your time. I will. Thank you, Your Honor. There's no question that this claim is exhausted and was presented to the State court. However, in affirming Mr. Cheatham's conviction that State court never considered the constitutional issue, whether the exclusion of this evidence violated Mr. Cheatham's right to present a defense as recognized by Chambers, as recognized by Washington v. Texas, as recognized by this Court in Alcala, instead they simply said we're not engaged in the balancing test required by this Court and by the United States Supreme Court. I'd like to reserve your comments. Didn't it identify the Crawford v. Texas? That's usually considered to control Washington v. Texas. They did cite to Washington v. Texas. Once they identify the Crawford Supreme Court case, did they then have to go through in quotes from the case, or what does that leave you? The State court's reference to those seminal Supreme Court decisions was in terms of its assessing whether the Moon test was the proper test. I think it's just a single paragraph where they say, we don't believe that the Moon test properly or gives enough weight to the right to present a defense. But they never engaged in the analysis of whether the exclusion in this case violated those that right as recognized by those cases. I'll reserve the rest of my time. Thank you. Thank you. Okay. Mr. Kostin. Good morning. May it please the Court. I'm Alex Kostin, Assistant Attorney General, representing this morning Doug Waddington. Respondent respectfully requests this Court to affirm the dismissal of Mr. Cheatham's petition, because this Court has consistently held that there is no Federal constitutional right to have a witness identification expert appointed. Mr. Cheatham's right to present defense was not violated, and Washington's Supreme Court adjudicated the claim on the merits and correctly applied the use of discretion standard that the United States Supreme Court uses. And this Court should not grant habeas relief, because this adjudication was not contrary to an unreasonable application of clearly established Federal law as determined by the United States Supreme Court. This Court has consistently held, and some of the more significant cases are the Jordan v. Ducharme, Jackson v. Ilst, United States v. Lankford, United States v. Kristoff, United States v. Labinsat, and United States v. George, that there is no Federal constitutional right to have a witness identification expert appointed. This Court has, again, consistently held that effective cross-examination of the victim coupled with the cautionary instruction would be sufficient to expose whatever inconsistencies or inaccuracies there are in witness testimony. And that's exactly the case. Your opponent points out there was no cautionary instruction here because the State courts in Washington refused to give one. Is that correct? No, Your Honor. That's incorrect because the Court specifically gave the instruction to the jury, and this is instruction number one. This is in Mr. Chisholm's records under page 117. The Court specifically said, you are the sole judges of credibility of the witnesses and the weight is to be given to the testimony of each. And considering the testimony of any witness, you may take into account opportunity and ability of the witness to observe the witness' memory and manner while testifying any interest, bias or prejudice the witness may have, the reasonableness of the testimony of the witness, and so on and so on. So the instruction was given. That's a pretty far cry from the careful instruction that we've mentioned. A couple of cases I was on, Hicks and Rincon, where I think in one of them the instruction was four pages long dealing with how to deal with eyewitness testimony. Well, yes, Your Honor. That's this instruction that was given is the standard instruction that's given in pretty much every case, I think. However, as this Court held in United States v. Langford, the vigorous cross-examination coupled with the instruction didn't specifically say what kind of instruction should be given. The most important factor in this case is that Mr. Cheatham, defense counsel, was able to vigorously cross-examine the victim and was actually able to bring several significant inconsistencies in her, between her trial testimony and the testimony that, and the information that she gave to the police after the rape. Some of those factors were that it was, that he was able to bring up at cross-examination. These factors were that it was dark, the lighting was very poor, it was misty and drizzling. Another thing is that at trial, the victim testified that Mr. Cheatham had no facial, her rapist had no facial hair. The defense was able to produce the videotape that showed Mr. Cheatham the day after the rape that showed that Mr. Cheatham had some sort of a shaved goatee. This, again, called into question the accuracy of the victim's identification. Another important thing that the defense counsel was able to bring up was that at trial, the victim testified that big and buggy, quote-unquote, eyes of the rapist were the most striking feature that she remembered about the rapist. However, she never brought this up when she talked to the police after the rape. So the defense was able to vigorously cross-examine the victim, bring up several significant inconsistencies between her testimony and the trial testimony and the information that she gave to the police, and actually was able to present also alibi defense and the videotape that showed Mr. Cheatham with some sort of a goatee that, again, contradicted the victim's testimony at trial. Could you please address the same question I posed to Ms. Endo? If we accept the theory here of the appeal, is there a stopping point or would it be suggesting that expert testimony on identification always has to be admitted? No, Your Honor. The test, the consistent holding by this Court is that there is no federal constitutional right to have expert identification, expert appointment. And depending on if there is a, if the defense was able to vigorously cross-examine the victim, if the trial court gave a cautionary instruction, that should be sufficient and the expert does not have to be appointed. There is a, there is a trend that, unlike in the past, where such testimony was almost summarily excluded, now the, the circumstances have changed and the courts and this circuit is more willing to accept this kind of testimony. However, there is no federal constitutional right to have this testimony. Unless I misread this, State court, I think it was the Supreme Court? Yes. State Supreme Court reviewed this and they didn't say that you could never have such testimony. They just held it was not an abuse of discretion to exclude it here. Am I right? Yes, that's right, Your Honor. Actually, the Washington Supreme Court conducted a very thorough and detailed examination of the issue. And it specifically noticed that, unlike in the past, the courts are now much more sympathetic to this kind of testimony. However, the Court correctly applied the abuse of discretion standard that the Washington Supreme, that the United States Supreme Court uses. And the Court specifically said that here, under the circumstances of this case, the Court specifically addressed the proposed testimony of Dr. Loftus and specifically said that under the circumstance of this case, the trial court did not abuse his discretion, although it's important to notice that the Washington Supreme Court did not simply rubber-stamp the trial court's finding. It actually disagreed with some of its findings, but ultimately decided that the findings were so – were not so untenable as to constitute the abuse of discretion. And in conclusion of – Counsel, may I ask a question? Yes. Counsel, may I ask a question? Did the defendant tender a cautionary instruction tailored to the fallibility of eyewitness testimony? I'm not – I'm not exactly sure, Your Honor. The test – the instruction that I have is the instruction that was given by the Court, and it's a standard – Yes, I understand that. But your – the instruction you gave is simply a pattern instruction which is given in every case, civil or criminal, telling the jury that they are the judges of the credibility of the witnesses. There's nothing in that instruction which you label a cautionary instruction to indicate that eyewitness testimony is being in any way differentiated from any other testimony of the witnesses. Is that correct? Your Honor, the instruction had the language that called the jury's attention to the testimony and specifically instructed the jury to look at the potential bias or inaccuracy in the – victims in the witness testimony. But there was nothing drawing attention to eyewitness testimony or cross-racial testimony or identification testimony given under stress, correct? No, Your Honor, nothing in the – in the instruction. However, the defense was – So the answer would – No. The answer would be yes, Your Honor, there is nothing in the – Yes, there's nothing in the instruction, Your Honor. All right. Thank you. In addition, as I understand it, the lack of a more specific instruction may be relevant on the – on the issue of denial of the witness an opportunity to testify, but there is no appellate issue raised to us, as I understand it, on denial of a proposed defense instruction on this, right? We don't have that before you. No, Your Honor. The issue here that is the denial of the Sixth Amendment right to present defense in general. Submission of this witness. And in conclusion, Respondent respectfully requests this Court to affirm the dismissal of Mr. Cheatham's habeas corpus petition. Thank you. Thank you. Ms. Endo, we've got some rebuttal time. Thank you, Your Honor. I wanted to address real quickly a few of the reasons why cross-examination here was insufficient. The evidence that Dr. Loftus would have provided would have talked about factors such as the scotopic system that the body uses in dark situations. The fact that Mr. Cheatham was able to cross-examine MM about the fact that the conditions were dark is an entirely different issue and much more limited, and did not provide the jury with the scientific framework to understand and evaluate her identification. Counsel for the State talked about the abuse of discretion standard employed by the State court. As this Court has recognized in Fendler v. Goldsmith and other cases, the abuse of discretion standard is not the standard that we use when we look at constitutional violations. It's the standard we use when we look at evidentiary rulings. But the right to present a defense requires more protection than that. And in Fendler, the Court found that cases dealing with an abuse of discretion clearly did not address the constitutional issue, because that requires de novo review by the court of the constitutional right. I also wanted to address quickly the question of whether or not an instruction was proffered by Mr. Cheatham. It was not, and that's not the issue we raise in this case, because the Washington Constitution, as interpreted by the Washington courts in cases such as State v. Hall and State v. Watkins, has explicitly said that a cautionary instruction on eyewitness identifications violates the Washington Constitution prohibition against comments on the evidence. And for those reasons, Mr. Cheatham was not entitled to an instruction under State law, but it provides just one of the circumstances why, or one of the reasons why the exclusion of the testimony in this particular case, where there was no instruction available, where there was no corroboration, where the circumstances of the identification are likely to lead to an unreliable identification, why in this case the exclusion of Dr. Luft, if this testimony violated Mr. Cheatham's right to present a defense. We would ask the Court to grant the writ and give Mr. Cheatham the opportunity to present the jury with the scientific framework necessary to evaluate the reliability of the identification. Thank you. Thank you, Ms. Endo. Well, we thank both counsel for their excellent arguments, and this case shall be submitted.
judges: T. Nelson, Gould, Bea